1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

10

11

A.G. DESIGN & ASSOCIATES, LLC, a
Washington limited liability company,

12

Plaintiff,

Case No. C07-5158FDB

13

v.

ORDER GRANTING PLAINTIFF'S
MOTION FOR INJUNCTIVE RELIEF

14

15

16

17

TRAINMAN LANTERN COMPANY, INC., a
Washington corporation, d/b/a AMERICAN
LANTERN COMPANY, INC.; AMERICAN
LANTERN, INC., a foreign corporation;
MARCUS MUKAI, individually and as a
marital community with JANE DOE MUKAI;
G. SCOTT MUKAI; and JOHN DOE
DEFENDANTS 1 through 10,

18

Defendants.

19

20

21

22

23

        Plaintiff moves for a preliminary injunction ordering defendants to immediately cease and

desist all manufacturing, marketing, and sales of their M2K Trainman Lantern (Accused Device), a

product that Plaintiff contends literally infringes on Plaintiff's patented Official Trainman Lantern

(the "Patented Device") as set forth in U.S. Patent No. 7,118, 245 B1, issued on October 10, 2006,

and attached as Ex. A to the Declaration of Allen Herrington.

24

25

        Plaintiff alleges that under the false pretense of due diligence in anticipation of buying

26

ORDER - 1

1  Plaintiff company, A.G. Design & Associates, LLC, Defendants deceptively accessed and copied

2  Plaintiff's confidential information and trade secrets pertaining to the Patented Device, including, but

3  not limited to plans, specifications, drawings, books of account, inventory lists, customer lists,

4  purchase orders/contracts for its products, customer contact information, and vendor information.

5  Plaintiff further alleges that Defendants used this information for the unlawful purpose of developing

6  the M2K Trainman Lantern (the "Accused Device"), which is a feature-by-feature copy of the

7  Patented Device and literally infringes on Plaintiff's patent.

8  **PRELIMINARY INJUNCTION STANDARD IN A PATENT LAWSUIT**

9       "The grant or denial of a preliminary injunction under 35 U.S.C. § 283 (1994) is within the

10  sound discretion of the district court. *Novo Nordisk of N. Am., Inc. v. Genentech, Inc.*, 77 F.3d

11  1364, 1367, 37 USPQ2d 1773, 1775 (Fed. Cir. 1996)." *Amazon.Com, Inc. v. Barnesandnoble.com,*

12  *Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001).

13       "[The moving party] is entitled to a preliminary injunction if it can succeed in showing: (1) a

14  reasonable likelihood of success on the merits; (2) irreparable harm if an injunction is not granted; (3)

15  a balance of hardships tipping in its favor; and (4) the injunction's favorable impact on the public

16  interest." *Amazon.Com*, *id.*  The District Court must weigh and measure each factor against the

17  other factors and against the form and magnitude of the relief requested.  *Id.*

18       A movant cannot be granted a preliminary injunction without showing the first two elements:

19  likelihood of success on the merits and irreparable harm.  *Id.*

20       To demonstrate a likelihood of success on the merits, a movant (here A.G. Design) must

21  show that, in light of the presumptions and burdens that will inhere at trial on the merits, that (1)

22  A.G. Design, will likely prove that the Accused Device infringes the patent at issue, and that (2) A.G.

23  Design's infringement claim will likely withstand Defendants' challenges to the validity and

24  enforceability of the patent.  *Id.*  If the maker of the Accused Device "raises a substantial question

25  concerning either infringement or validity, *i.e.*, asserts an infringement or invalidity defense that the

26  ORDER - 2

1    patentee cannot prove 'lacks substantial merit,' the preliminary injunction should not issue."

2    *Amazon.Com*, at 1350-51.

3            Of course, whether performed at the preliminary injunction stage or at some
      later stage in the course of a particular case, infringement and validity analyses must
4     be performed on a claim-by-claim basis. *See, e.g., Bayer AG v. Elan Pharm.
      Research Corp.*, 212 F.3d 1241, 1247, 54 USPQ2d 1711, 1715 (Fed. Cir.
5     2000)("Literal infringement requires the patentee to prove that the accused device
      contains each limitation of the asserted claim(s)."(citations omitted)); *Ortho Pharm.
6     Corp. v. Smith*, 959 F.2d 936, 942, 22 USPQ2d 1119, 1124 (Fed. Cir.
      1992)(concluding that all grounds of invalidity must be evaluated against individual
7     claims, as required by the plain language of 35 U.S.C. § 282 (1994)).  Therefore, in
      cases involving multiple patent claims, to demonstrate a likelihood of success on the
8     merits, the patentee must demonstrate that it will likely prove infringement of one or
      more claims of the patents-in-suit, and that at least one of those same allegedly
9     infringed claims will also likely withstand the validity challenges presented by the
      accused infringer.
10
      *Amazon.Com*, at 1351.
11
              It is well settled that an infringement analysis involves two steps: the claim scope is
12    first determined, and then the properly construed claim is compared with the accused
      device to determine whether all of the claim limitations are present either literally or
13    by a substantial equivalent. *See, e.g., Young Dental Mfg. Co. v. Q3 Special Prods.,
      Inc.*, 112 F.3d 1137, 1141, 42 USPQ2d 1589, 1592 (Fed. Cir. 1997). ...  "A claim
14    must be construed before determining its validity just as it is first construed before
      deciding infringement."  *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 996 n.
15    7, 34 USPQ2d 331321, 1344 n. 7 Ifed. Cir. 1995)(Mayer, J., concurring), *aff'd*, 517
      U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1966).
16
      *Id.*
17
              "To establish literal infringement, every limitation set forth in a claim must be found in an
18
      accused product, exactly."  *Southwall Technologies, Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575
19
      (Fed. Cir. 1995).
20
              "An accused product that does not literally infringe a claim, may infringe under the doctrine
21
      of equivalents if 'it performs substantially the same function in substantially the same way to obtain
22
      the same result.'"  *Southwall* at 1579, (citing *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339
23
      U.S. 605, 608 (1950)).  "Only if an accused product contains specific structure which meets all
24
      limitations of an asserted claim directed to structure, at least equivalently, can that product infringe
25

26    ORDER - 3

1   under the doctrine of equivalents." *Id.* (citing *Pennwalt Corp. v. Durand-Wayland, Inc.*, 833 F.2d

2   931, 935 (Fed. Cir. 1987)(en banc)).   "The doctrine of equivalents, however, is not a tool for

3   expanding the protection of a patent after examination has been completed." *Id.*    "Thus,

4   prosecution history estoppel limits the range of equivalents available to a patentee by preventing

5   recapture of subject matter surrendered during prosecution of the patent. *Southwall* at 1579 (citing

6   *Townsend Eng'g Co. v. HiTec Co.*, 829 F.2d 1086, 1090 (Fed. Cir. 1987)).

7          Under 35 U.S.C. § 102, a person is not entitled to a patent if the invention was (a) "known or

8   used by others in this country ..." or (b) "described in a printed publication ... or in public use or on

9   sale in this country, more than one year prior to the date of the application for patent."   A

10  determination that a claim is invalid due to lack of novelty under 35 U.S.C. § 102 requires a finding

11  that every limitation is found in a single prior art reference.  *Amazon.Com, Inc. v.*

12  *Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001).

13         "Irreparable harm is presumed when a clear showing of patent validity and infringement has

14  been made. [citations omitted] 'This presumption derives in part from the finite term of the patent

15  grant, for patent expiration is not suspended during litigation, and the passage of time can work

16  irremediable harm.'" *Id.* at 1350.

17                      **PARTIES' CONTENTIONS AND ARGUMENT**

18         ***Defendants' Contentions and Argument***

19         Defendants contend that Plaintiff cannot show a reasonable likelihood of success on the

20  merits because (a) it is unlikely that Plaintiff will be able to prove that Defendants' device infringes

21  on U.S. Patent No. 7,118,245 B1 ("Patent 245"); and (b) Plaintiff's actions, public use, and various

22  printed publications raise substantial questions concerning both the validity and enforceability of

23  Patent 245.

24         Defendants argue that the Accused Device, their M2K lantern, cannot literally infringe on the

25  Patented Device, Patent 245, because the limitation of "a plurality of ports" located in the reflector is

26  ORDER - 4

present in both the independent Claims 1 and 12.  Defendants assert that their M2K does not contain a plurality of ports formed in the reflector.  Additionally, Defendants argue that their M2K lantern cannot infringe as an equivalent because it lacks any structure that may be interpreted as the equivalent of the plurality of ports in the reflector wall as is required in the Patent 245 claims.  Moreover, Defendants argue that Plaintiff cannot claim the benefit of the doctrine of equivalents to now expand the reach of Patent 245 claims that were voluntarily given up during prosecution.

Defendants argue that Plaintiff's Patent 245 is invalid under 35 U.S.C. § 102, which provides that a person is not entitled to a patent if the invention was (a) "known or used by others in this country ..." or (b) "described in a printed publication ... or in public use or on sale in this country , more than one year prior to the date of the application for patent."  Defendant contends that while Plaintiff states that "[t]he first sale of the Official Trainman Lantern was made on June 16, 2003 to Florida East Coast Railway Co." (Complaint ¶ 4.1), as early as October 9, 2002, Plaintiff was distributing and publishing marketing material detailing the "AG Design Titan III Trainman Lantern" design.  (Mukai Decl. Ex. B) These public disclosures and published documents were available well over a year prior to the filing date of Patent 245.  Thus, had the patent examiner been aware of Plaintiff's public disclosures and published documents, the patent examiner would have rejected Plaintiff's patent application as lacking novelty under 35 U.S.C. § 102.

Defendants also argue that Patent 245 is unenforceable for patent misuse, which occurs when the patent's owner attempts to use it to exclude competitors from the marketplace knowing that the patent is invalid or unenforceable.  *See, e.g., Affymetrix, Inc. v. PE Corporation*. 219 F. Supp.2d 390, 397 (S.D.N.Y. 2002)(citing *C.R. Bard, Inc. v. M3 Systems, Inc.*, 157 F.3d 1340, 1373 (Fed. Cir. 998)).

As to irreparable harm, Defendants argue that Plaintiff is not entitled to a presumption of irreparable harm because substantial questions exist as to the validity and enforceability of Patent 245; specifically, Defendant has presented evidence that M2K does not infringe Patent 245, that

ORDER - 5

1   Patent 245 is invalidated by prior art references; and Patent 245 is unenforceable for patent misuses.

2   Also, Plaintiff's asserted damage – lost customers or sales – is not irreparable, rather it is simply lost

3   revenue that can be cured by money damages.  Defendants also argue that Plaintiff's claims of

4   irreparable harm are inadequate not only because they are speculative, based on erroneous

5   presumptions, and can be curable my monetary damages, but they are undermined by Plaintiff's delay

6   in filing this case: Patent 245 was issued on October 10, 2006, Plaintiff claims to have been aware of

7   the Accused Device since approximately October 23, 2006 [see Complaint ¶ 4.13], but Plaintiff failed

8   to bring suit until April 2007.

9       Defendants argue that the balance of hardships tips in their favor as Plaintiff has failed to

10  show a likely infringement.  Defendants argue that if Plaintiff fails to obtain injunctive relief, it may

11  obtain monetary damages if it later prevails; however, if Plaintiff obtains injunctive relief,

12  Defendants' entire business would be terminated.

13      Defendants finally argue that the public interest would be adversely affected if an injunction

14  were to issue, because the railroad companies would lose competitive choices for service.

15  ***Plaintiff's Contentions and Argument***

16      Plaintiff argues that the asserted defenses lack merit.  First, concerning the allegation that

17  Plaintiff was publishing marketing material that advertised a plurality of ports in the reflector, a close

18  read of the materials bearing dates reveals no mention of a reflector with ports; these materials all

19  pertained to prototype lanterns, not the Patented Device.  Moreover, Plaintiff asserts that the

20  marketing materials pertaining to the Patented Device, featuring a plurality of ports in the reflector,

21  that Defendant Mukai claims to have distributed from October 2002 to January 2003 were not even

22  proofed by Plaintiff's marketing company until June 4, 2003.  Moreover, Plaintiff argues, that even

23  accepting Defendants' assertions regarding the timing of the disclosures, which were only made to

24  select customers, the patent is still valid under the period of experimentation doctrine, which permits

25  such a period without triggering the public use bar if the earlier uses are for experimental and not

26  ORDER - 6

1   commercial purposes, even under circumstances in which the invention may be observed by members

2   of the public.  *See City of Elizabeth v. American Nicholson Pavement Co.*, 97 U.S. 126 (1877); *see*

3   *also Baker Oil Tools, Inc. v. Geo Vann, Inc.*, 828 F.2d 1558 (Fed. Cir. 1987).

4          Plaintiff argues that it has a substantial likelihood of prevailing under the doctrine of

5   equivalents.  By lack of argument to the contrary, Plaintiff contends that Defendants concede that the

6   Accused Device is identical to the Patented Device in every way except for the ports in the reflector.

7   Defendants cannot escape infringement by arguing that because the Accused Device does not contain

8   ports in the reflector, it does not achieve the same result as the Patented Device, because this

9   argument "ignores the thrust of claim 1 of Patent 245."  Plaintiff asserts that both devices achieve the

10  exact same result: a secondary light source comprising a plurality of LEDs mounted at spaced

11  locations around the reflector and radiating light in a substantially radial pattern.  Even though the

12  Accused Device does not have reflector ports to augment this secondary light source, Defendants

13  cannot evade the doctrine of equivalents as both devices work in the same way and achieve the same

14  result.  Plaintiff contends that the Accused Device, merely has a minor change – no ports included in

15  the reflector – and that the Accused Device is identical to the Patented Device, down to .05 microns

16  in some dimensions, in virtually every other way.   Defendants' prosecution history argument misses

17  the mark, as the fact remains that setting the reflector ports issue aside, the use of the LEDs to

18  reflect light off of the outside of the reflector laterally is still an infringement of claim 1 of patent 245.

19

20         As to irreparable harm, Plaintiff argues that it has made a strong showing of likelihood of

21  success on the merits and is entitled to a presumption of irreparable harm.  Moreover, Plaintiff

22  contends that its opportunity to increase its market share will be lost if Defendants are permitted to

23  continue manufacturing, marketing, and selling the Accused Device.  Plaintiff contends that it is in

24  peril of "losing its Class I customer base because of defendants' introduction of the Accused Device

25  at an undercutting price.  This lost market share is not quantifiable in a monetary sense, as A.G.

26  ORDER - 7

1  Design will never be able to calculate what potential customers it lost as a result of defendants'

2  activities.

3      Next, Plaintiff contends that Marcus Mukai is in breach of the Non-Compete provision of the

4  Non-Exclusive Sales Representative Agreement he signed on April 1, 2003.  Plaintiff argues that by

5  violating that contract, Mr. Mukai is competing directly against A.G. Design and disparaging its

6  reputation and good name in the process in an effort to push the Accused Device, and that this

7  damage to reputation cannot be remedies by monetary damages alone.

8      Finally, Plaintiff contends that Defendants' illegal copying of the Patented Device permitted

9  them to avoid the research and development expenses, much of which is not capable of direct

10 calculation.

11     As to the balance of hardships, Plaintiff argues that the evolution of the Patented Device from

12 1998 through various prototypes involving an investment of time, money, intellectual effort, and

13 market research will have been for naught, and deflect sales and cause confusion in the marketplace

14 should Defendants be permitted to continue manufacturing and marketing the Accused Device.

15     Plaintiff argues that the public interest involves the safety of railroad employees, which

16 demands a high-quality, well-designed lantern, and to permit a cheap knock-off product to enter that

17 environment, and any other jobsite where safety is imperative, would create undue risk for the public.

18

19                                    **DISCUSSION**

20     A hearing having been held on Plaintiff's motion for preliminary injunction, and the Court

21 having heard the witnesses and the parties' arguments, and evidence having been adduced by both

22 Plaintiff and Defendants, and the Court having reviewed and considered the parties' memoranda on

23 the motion, now concludes that Plaintiff A.G. Design's motion for injunctive relief should be granted

24 as requested for the reasons set forth in the analysis that follows.

25     The testimony at the hearing, the Patent, and the record in this case reveals that the lantern

26 ORDER - 8

1   used by trainmen prior to Plaintiff's invention was insufficient for the trainmen's purposes in signaling

2   and illumination: for example,  in signaling engineers, illuminating car numbers, the work area, or to

3   see where to walk, and in other duties requiring that the trainmen can see and be seen.  (Herrington

4   testimony; Jorgensen Report; Patent, col. 1 "Background.") The shortcomings of a previous

5   trainman's lantern from Star Headlight and Lantern Company is detailed in the patent as well as in the

6   testimony and declaration of Allen Herrington, President and Chief Executive Officer of A.G. Design,

7   who is also trained as an engineer.  The Star lantern's light shined forward but  would shine from one

8   side only from an exposed, but protected bulb.  Seeing the need for a  trainman's lantern with, among

9   other things, 360 degrees lateral illumination with sufficient brightness that it is visible at extended

10  distances, and which performs without excessive battery drain, Herrington developed his Patented

11  Device, the "Official Trainman Lantern."

12      The "Summary of the Invention" at Column 2 of the Patent, as well as Herrington's

13  testimony,  explains how Herrington's lantern solved the problem of producing a trainman's lantern

14  with 360 degrees of bright, lateral illumination.  Claims 1 and 12 of the Patent, at Columns 9 and 10,

15  set forth what is claimed by the patent.  In general terms, there is a central light source inside the

16  reflector, and there is a least one secondary light source (LEDs) mounted externally to the reflector,

17  the surface of which projects light in a generally lateral direction from the lantern.  Additionally, ports

18  in the reflector allow light from the bulb inside the reflector to augment the light from at least one

19  secondary source outside the reflector (the LEDs) by means of ports in the reflector.

20      Jens Jorgensen, Ph.D. mechanical engineer, prepared a report and testified in court that he

21  compared the Accused Device to the Patent Claims and found the Accused Device to be identical in

22  all respects (within + or- .005) to the Patented Device, except that the Accused Device lacked the

23  "plurality of ports" in the reflector that would allow the central light to augment the lateral light.  Dr.

24  Jorgensen found the augmentation of the lateral light through the ports to be "noticeable but not

25  significant."  Dr. Jorgensen agreed that while the Accused Device did not "read on" the claims of the

26  ORDER - 9

1   Patented Device as to the plurality of ports, the two sources of light on the Accused Device function

2   fine without the ports, and the Accused Device infringes because it does the same thing as the

3   Patented Device.  The Court agrees with Dr. Jorgensen's conclusions for the following reasons.

4           "Literal infringement" is not established as to the Accused Device, because not every

5   limitation found in the Claims is found in the Accused Device exactly.  Plaintiff has, however,

6   demonstrated infringement under the Doctrine of Equivalents because the Accused Device "performs

7   substantially the same function in substantially the same way to obtain the same result" as the

8   Patented Device.  *See Southwall Technologies, Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed.

9   Cir. 1995).  The Accused Device provides two sources of light: one source inside a reflector, and

10   another source from LEDs outside the reflector that provide 360 degrees of lateral light.  The Court

11   also agrees with Dr. Jorgensen's conclusion that the difference in the amount of lateral light was

12   noticeable but not significant.  Thus, the function of providing 360 degrees of bright, lateral light is

13   the same in both products, and this lateral light is achieved in substantially the same way.  Defendants

14   argued that if infringement is found under the Doctrine of Equivalents, Plaintiff could challenge

15   infringement by any lantern that lacked a plurality of ports, including the Star lantern listed as prior

16   art.  This argument fails because the crucial element is the provision of 360 degrees of lateral light in

17   addition to the central light source, and the Star lantern lacks this functionality.  The Accused Device,

18   however, functions to provide 360 degrees of lateral light.  The Accused Device infringes the

19   Patented Device under the Doctrine of Equivalents.

20           Plaintiff A.G. Design has provided a strong case of likelihood of success on the merits.

21   Plaintiff has also demonstrated irreparable harm if injunctive relief is not granted, as well as having

22   shown that the balance of hardships tips in its favor.  Allen Herrington described how the railroad

23   industry, to which he markets his product, is revising and consolidating the manner in which it

24   purchases commodities by forming a "Rail Marketplace" where vendors who provide the best volume

25   price would find their products standardized into all Class One railroads, and the Class Two, and

26   ORDER - 10

1   short lines, and others would eventually follow, as well.  The Accused Device is being marketed with

2   a "lifetime guarantee" to the railroad market, and Plaintiff's losses could not be calculated, given all

3   that A.G. Design has put into developing the Patented Device, if Plaintiff lost the railroad market to

4   Defendants.  Defendant Mukai testified that some railroads are testing the Accused Device, and he

5   stated that he has only six prototypes.  Under these circumstances, Plaintiff has demonstrated

6   irreparable harm if an injunction is not granted and has also demonstrated that the balance of

7   hardships tips in his favor.  The public interest element favors protecting A.G. Design's patent rights

8   in this context, where such a strong showing of infringement has been made.  Plaintiff's showing of

9   irreparable harm is sufficient.

10          Further to Plaintiff's demonstration of likelihood of success on the merits, Defendants'

11  challenges to the validity and enforceability of the patent fail.  One is not entitled to a patent if the

12  invention was (a) known or used by others in this country, or (b) described in a printed publication ...

13  or in public use or on sale in this country, more than one year prior to the date of the application for

14  patent.  A determination that a claim is invalid due to lack of novelty under 35 U.S.C. § 102 requires

15  a finding that every limitation is found in a single prior art reference.  Allen Herrington explained in

16  his declaration, and also testified in the hearing, of the development history of the Patented Device.

17  A.G. Design had a three-year development contract with BNSF.  Modifications of the design

18  continued into 2003.  The first sale was made on June 16, 2003 to Florida East Coast Railway Co.

19  Allen Herrington testified that the A.G. Design patent was applied for on May 11, 2004.  Defendant

20  Mukai asserts that the A.G. Design Titan III Trainman Lantern, which disclosed all the elements of

21  the patent, was disclosed as early as October 9, 2002.  At the hearing, however, the lantern of which

22  Defendant spoke was shown to be a prototype and not the Patented Device.  Defendants have failed

23  to raise a substantial question concerning validity, and A.G. Design has demonstrated that

24  Defendants' challenge to the Patent's validity lacks substantial merit.

25          Accordingly, the Court will grant A.G. Design's Motion for Injunctive Relief

26  ORDER - 11

1     Plaintiff A.G. Design further argues that Defendants utilized confidential information to which

2   Defendant Mukai had access both as an independent sales representative for A.G. Design and in the

3   course of Defendant Mukai's negotiations to purchase Plaintiff's business.  ("Non-Exclusive Sales

4   Representative Agreement, Provision For Proprietary Rights Protection And Covenant Not To

5   Compete."  (Plaintiff's Ex. 9); Letter of Intent, (Plaintiff's Ex. 14).) Plaintiff contends that Defendants

6   not only have violated patent law, but Defendant Marcus Mukai has violated the April 1, 2003

7   Agreement executed by Allen Herrington and Marcus Mucai.  This argument is not directly relevant

8   to the showing that Plaintiff must make to obtain injunctive relief in a patent infringement context.

9   Plaintiff has, however, demonstrated a serious question as to Defendant Marcus Mukai's violation of

10   the "Non-Exclusive Sales Representative Agreement, Provision For Proprietary Rights Protection

11   And Covenant Not To Compete." The Court did not find Defendant Marcus Mukai's testimony as to

12   this Agreement persuasive.  The Covenant Not To Compete runs for three-years following

13   termination of the Agreement, and Herrington testified that the Agreement was terminated at the

14   same time the Letter of Intent was terminated, around June 15, 2004.   Accordingly, because a

15   serious question has been raised on the issue of the Covenant Not To Compete, and because the

16   balance of hardships tips in Plaintiff's favor on this issue for reasons similar to those in the patent

17   infringement analysis above, another basis for preserving the status quo pending final resolution of the

18   issue has been shown.

19                                  **CONCLUSION**

20     Plaintiff A.G. Design has demonstrated that it is entitled to injunctive relief, as A.G. Design

21   has made a strong showing that the Accused Device likely infringes the patent in issue, and has

22   demonstrated that its infringement claim will likely withstand the Defendants' challenges to the

23   validity and enforceability of the Patent.  Plaintiff has also shown  that irreparable harm is likely, that

24   the balance of hardships tips in its favor, and that the public interest favors granting  injunctive relief.

25     ACCORDINGLY,

26   ORDER - 12

1    IT IS ORDERED: Plaintiff A.G. Design's Motion for Injunctive Relief [Dkt. # 5] is

2  GRANTED.  Until this litigation is otherwise resolved, the Court Orders the following:

3    1.    As of the date this Order is entered, Defendants are prohibited from further

4          manufacturing, marketing, or sale of the Accused Device or any similar product;

5    2.    Defendants are commanded to immediately give written notice, in a form approved by

6          the Court, to any customer, purchaser, or prospective purchaser that the Accused

7          Device may have been unlawfully manufactured and sold in violation of the patent set

8          forth in Exhibit A to Plaintiff's Complaint;

9    3.    Defendants are hereby prohibited from any further use of any and all confidential

10         information and trade secrets given to Defendants by Plaintiff and shall return such

11         information to Plaintiff within 20 days; and

12   4.    Defendants are commanded to notify their business contacts, including, but not limited

13         to, designers, engineers, manufacturers, suppliers, representatives, financiers, and

14         buyers that they must turn over to Plaintiff copies all documents, information,

15         electronic data, and other tangible things pertaining in any way to the manufacture,

16         design, marketing, and sale of the Accused Device.

17

18    DATED this 3rd day of July, 2007.

19

20                                    _____

21                                    FRANKLIN D. BURGESS
                                      UNITED STATES DISTRICT JUDGE

22

23

24

25

26  ORDER - 13