THE HONORABLE RONALD B. LEIGHTON

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| A.G. DESIGN & ASSOCIATES, LLC, a Washington Limited Liability Company,<br><br>      Plaintiff,<br><br> v.<br><br>TRAINMAN LANTERN COMPANY, INC., a Washington Corporation d/b/a AMERICAN LANTERN COMPANY, INC.; AMERICAN LANTERN, INC. , a Foreign Corporation; MARCUS MUKAI, individually and as a marital community with JANE DOE MUKAI; G. SCOTT MUKAI; AND JOHN DOE DEFENDANTS 1 THROUGH 10,<br><br>      Defendant. | Case No. C07-5158RBL<br><br>ORDER |

  This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment or, in the Alternative, Preliminary Injunctive Relief [Dkt. # 138] and Plaintiff's Motion to Strike. [Dkt # 146] For the reasons set forth below, summary judgment is DENIED in part and GRANTED in part, and the injunction is DENIED.

### I. Introduction

  Plaintiff A.G. Design & Associates, LLC (A.G. Design) is a Washington limited liability corporation that sells railroad lanterns for use by trainmen and engineers. [Dkt # 1] One of A.G. Design's products is the Official Trainman Lantern. [Dkt # 138] In 2000, A.G. Design hired Pulse Power to develop rechargeable batteries for the Trainman Lantern. [Dkt # 6; 13; 14] Defendant Marcus Mukai was then an employee of Pulse Power and became acquainted with

Plaintiff in that manner. Mukai was interested in A.G. Design and became a sales representative, and on April 1, 2003, Mukai entered into a Non-Exclusive Sales Representative Agreement with A.G. Design (the April 1 Agreement). [Dkt # 6, 13] The April 1 Agreement contained both a non-disclosure covenant and a three-year covenant not to compete. [Dkt # 6, exhibit B]

On August 12, 2003, brothers Marcus and G. Scott Mukai expressed an interest in purchasing A.G. Design and submitted a formal letter of intent to that effect (the August 12 Letter). [Dkt # 6; 13] The August 12 Letter also contained a confidentiality covenant. [Dkt # 6, exhibit C] The brothers Mukai incorporated Defendant Trainman Lantern Co. (T.L.C.) to facilitate the purchase. [Dkt # 6, 13] The purchase deal fell through and A.G. Design sent Marcus Mukai his final check on July 30, 2004. [Dkt # 6]

T.L.C. continued to exist and later that year began researching the possibility of manufacturing an all-LED sportsman's lantern, what would eventually become the M2K lantern, for sale to outdoor wholesalers in Hawaii and Asia. [Dkt # 145, ¶ 13] T.L.C. actively entered the railroad lantern business in October 2006 only after being encouraged to do so by the Union Pacific and Norfolk Southern Railroads. [Dkt # 138; 145, exhibit 3, at 13-16]

A.G. Design filed this suit on April 3, 2007, making a variety of claims, including patent infringement, breach of contract, and misappropriation. [Dkt # 1; 133] Judge Burgess issued a preliminary injunction ordering Defendants to cease manufacturing, marketing, and sales of the M2K lantern. [Dkt # 26] The Court of Appeals for the Federal Circuit vacated the injunction. [Dkt #100] Subsequent to the Federal Circuit's decision, this Court granted T.L.C.'s motion for partial summary judgment estopping A.G. Design from claiming patent infringement. [Dkt # 143] A.G. Design now moves this Court to grant summary judgment finding Defendants liable under Washington law for breaching the confidentiality and non-compete covenants and for misappropriation. [Dkt # 138] In the alternative, A.G. Design moves this Court to enjoin Defendant from manufacturing, marketing, and distributing the M2K trainman lantern.

ORDER
Page - 2

## II. Discussion

Summary judgment is only appropriate if there is no genuine issue of material fact, when the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 744 U.S. 242, 247-48 (1986); Fed. R. Civ. P. 56. When viewing the facts, all reasonable inferences must be drawn in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The non-moving party's bare assertion of a dispute is insufficient to create a material issue of fact and defeat summary judgment. *Anderson*, 477 U.S. at 247-48; *Dubois v. Ass'n of Apt. Owners*, 453 F.3d 1175, 1180 (9th Cir. 2005).

Issuance of a preliminary injunction is within the sound discretion of the Court. *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001). "[The moving party] is entitled to a preliminary injunction if it can succeed in showing: (1) a reasonable likelihood of success on the merits; (2) irreparable harm if an injunction is not granted; (3) a balance of hardships tipping in its favor; and (4) an injunction's favorable impact on the public interest." *Id.*

Generally, an employee who leaves a company is free to engage in competitive employment. *Ed Nowogroski Ins., Inc. v. Rucker*, 137 Wn.2d 427, 437, 971 P.2d 936 (1999). This general rule does not extend so far as to allow the employee to obtain an unfair advantage through use of the confidential information of his former employer. *Id.* Employers can further protect their interests by entering into contracts with their employees prohibiting the employees from competing with their former employer for a period of time after leaving their employment and from disclosing confidential information. *Id.*

### A. Misappropriation and Breach of Contract: Confidentiality[1]

Plaintiff claims the brothers Mukai engaged in misappropriation under the Uniform Trade Secrets Act, RCW 19.108, and breached the confidentiality covenants in the August 12 Letter when they "accessed A.G. Design's designs, technologies, financial information, customer lists, and other confidential information and used them to manufacture, market, and distribute the

---

[1] Plaintiff uses language referring only to the April 1 Agreement with Marcus Mukai, but extends the argument to both that agreement and the August 12 Letter, which also bound G. Scott Mukai. [Dkt # 138, at 14 n.4] Plaintiff is correct in its analysis and the Court considers both contracts simultaneously. Because G. Scott Mukai was only a party to the August 12 Letter, the Court will discuss the two confidentiality contracts in that context.

M2K Trainman Lantern." [Dkt # 138, at 14] Defendants do not question whether the non-disclosure provision was reasonable, instead they argue that there were no trade secrets for them to disclose and that they did not disclose anything. [Dkt # 144, at 4-6]

Under the Uniform Trade Secrets Act, a variety of types of information can be a trade secret when (a) their value is dependent upon their continued secrecy and (b) the efforts to keep them secret are reasonable under the circumstances. RCW 19.108.010(4). A.G. Design asserts a variety of information that the brothers Mukai disclosed. The Court views each in turn.

First, A.G. Design asserts the T.L.C. used its knowledge of its designs and technologies in development of the M2K lantern. T.L.C. argues, and A.G. Design admits, that A.G. Design has a patent on the technology it asserts is the basis for the claim, the Official Trainman Lantern. Part of the fundamental law of patents is that the patent holder agrees to exchange one type of protection, secrecy, for another, exclusive rights to the technology. *Coenco, Inc. v. Coenco Sales, Inc.*, 940 F.2d 1176 (8th Cir. 1991) (applying Arkansas's version of the Uniform Trade Secrets Act, Ark. Code Ann. § 4-75-601); *Water Technologies Corp. v. Calco, Ltd.*, 850 F.2d 660, 670 (Fed. Cir. 1988).

However, this exchange does not take place until the patent is issued and the information becomes public knowledge. A.G. Design cites to its patent application as evidence that they sought to keep the design a trade secret. [Dkt # 146, at 8] The ability of A.G. Design to patent the Official Trainman Lantern was in part dependent upon keeping the design secret prior to the application, making its value dependent upon secrecy. *See Amazon.com*, 239 F.3d at 1358. This value would expire once the application was made. *Id.* The April 1 Agreement itself is evidence of A.G. Design's reasonable efforts to keep the design secret. The design of the Official Trainman Lantern was a trade secret prior to the date of the patent application.

While A.G. Design points to evidence that T.L.C. began development of the M2K lantern before A.G. Design's patent was issued, T.L.C. denies that it used or disclosed A.G. Design's secrets in the development process. [Dkt # 146, at 8-9] T.L.C. has presented voluminous documentation of its development of the M2K lantern that creates a material issue of fact whether T.L.C. used confidential information in development of the M2K lantern. [Dkt # 145]

ORDER
Page - 4

Second, A.G. Design asserts Mukai used his knowledge of its financial information, customer lists, and other confidential information in marketing and distribution of the M2K lantern. [Dkt # 138, at 14; 146, at 5, 9-11] A.G. Design admits that before October 2006, the brothers Mukai were developing the M2K lantern with the intent of manufacturing a sportsman lantern. [Dkt # 138, at 6] In his testimony during the hearing for the initial injunction, Marcus Mukai admitted he had received financial records and manufacturing cost information from A.G. Design during his time as a sales representative under the April 1 Agreement. [Dkt # 66, at p.116 l. 17-p.118 l. 4] Therefore, in their marketing, T.L.C. could have used this information to its advantage when making similar decisions in its own business.

This information is damning, but does not rise to the level of "a reasonable likelihood of success on the merits" that is required for an injunction. *Amazon.com*, 239 F.3d at 1350. While it is clear that Mukai had such information, there is no evidence that Mukai disclosed this information in the conduct of his business. For example, Plaintiff cites to communications by Marcus Mukai where he discloses pricing information. [Dkt # 146, at 10] Such information is not a trade secret because there is necessarily no attempt to keep it secret. RCW 19.108.010(4). A secret price would be of little use to anyone.

Plaintiff's argue that the mere fact that the brothers Mukai had confidential information about A.G. Design, without any evidence of their actually disclosing or using that information to their benefit, is sufficient to support both an injunction and summary judgment. There is an issue of material fact whether the brothers Mukai violated Washington law or their confidentiality obligations and summary judgment is DENIED. Plaintiff has not shown a reasonable likelihood of success on the merits and its motion for an injunction is DENIED.

**B. Breach of Contract: Non-Compete**

Plaintiff also claims that Marcus Mukai violated the covenant not to compete contained in the April 1 Agreement by developing the M2K lantern prior to the Agreement's expiration on July 30, 2007. Plaintiff seeks summary judgment on that claim and, alternatively, a temporary injunction. [Dkt # 138, at 15, 22-23] Defendant Mukai responds that the covenant not to compete

expired in March 2007, three years from the date of his termination rather than of his last payment, and that he did not violate the agreement during either period. [Dkt # 144, at 6-7]

The validity and enforceability of the covenant not to compete are undisputed. On its face, the April 1 Agreement prohibits Marcus Mukai from (1) affiliating through agency or ownership of any company; (2) owning more than one percent of the capital stock of any company; and (3) inducing any customer of A.G. Design to do business with any company other than A.G. Design who does business in the railroad industry. [Dkt # 6, exhibit B, at 4-5]

The brothers Mukai admit they began development of an all-LED sportsman lantern a matter of months after March 1, 2004. [Dkt # 145, at ¶¶ 13-15] Development continued until Judge Burgess issued the Preliminary Injunction on July 3, 2007. [Dkt # 26] In about October 2006, Union Pacific and Norfolk Southern approached the brothers Mukai about entering the railroad testing program. [Dkt # 14, ¶ 32] Rather than informing the railroads that the contract covenant prohibited Marcus Mukai from competing with A.G. Design, either personally or through affiliation with any corporate entity, T.L.C. chose to participate in the program. [Dkt # 14, at ¶¶ 33-36; 145, exhibit 3, at 13-16; 145, exhibit 4, at 13-16] Taking the facts in the light most favorable to T.L.C., the non-competition clause in the April 1 Agreement did not expire until March 2007, a date months or years after the breach took place. [Dkt # 144, at 6]

Plaintiff also requests a preliminary injunction on these same grounds. Judge Burgess previously granted an injunction on these grounds. [Dkt # 26, at 12] That injunction was reversed by the Federal Circuit. [Dkt # 100] No new evidence supporting an injunction on this issue has arisen since that opinion, and the law of the case precludes an injunction on these grounds.

Under the undisputed facts, Defendant violated the April 1 Agreement covenant not to compete and Plaintiff's motion for summary judgment on that issue is GRANTED. The issue of damages, including the date the covenant expired, is reserved for determination at a later time. A preliminary injunction is barred by the law of the case and Plaintiff's motion for an injunction is DENIED.

ORDER
Page - 6

### III. Conclusion

Plaintiff A.G. Design moves for summary judgment as to three of its claims: breach of the confidentiality contract, breach of the non-competition contract, and Washington statutory misappropriation. In the alternative, Plaintiff requests a preliminary injunction preventing Defendant T.L.C. from manufacturing, marketing, and distributing the M2K lantern. [Dkt # 138] As to Plaintiff's misappropriation and breach of confidentiality claims, material issues of fact remain and summary judgment is DENIED. As to Plaintiff's non-competition claim, the facts proving a breach are undisputed and summary judgment is GRANTED. As to the injunction, Plaintiff has failed to present evidence showing a reasonable likelihood of success on the merits and a preliminary injunction is DENIED. Disposition of these issues does not require the Court to reach Plaintiff's Motion to Strike. [Dkt # 146] To preserve the record, Plaintiff's Motion to Strike is DENIED. Plaintiff's remaining claims as well as Plaintiff's damages, if any, remain to be determined at a later date.

IT IS SO ORDERED.

Dates this 1st day of July 2008.

/s/ Ronald B. Leighton
RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE

ORDER
Page - 7