HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| A.G. DESIGN & ASSOCIATES, LLC, a Washington Limited Liability Company,<br><br>Plaintiffs,<br><br>v.<br><br>TRAINMAN LANTERN COMPANY, INC., a Washington Corporation d/b/a AMERICAN LANTERN COMPANY, INC.; AMERICAN LANTERN, INC., a Foreign Corporation; MARCUS MUKAI, individually and as a marital community with JANE DOE MUKAI; G. SCOTT MUKAI; AND JOHN DOE DEFENDANTS 1 THROUGH 10,<br><br>Defendants. | Case No. 07-05158 RBL<br><br>ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SANCTIONS |

THIS MATTER is before the Court upon Plaintiff's Motion for Order Holding Defendants in Contempt and Imposing Rule 37(b) Sanctions. [Dkt. # 176]. For the reasons stated below, Plaintiff's Motion for sanctions is GRANTED IN PART.

## I. BACKGROUND

On March 30, 2007, A.G. Design filed suit against Trainman Lantern Inc. and Marcus Mukai for patent infringement, unfair competition, breach of contract, interference with business relations, violation of the Washington Consumer Protection Act, and conversion. [Dkt. #1]. A.G. Design alleged in its Complaint that Mukai stole confidential trade secrets from its company while working as a sales representative, and that Mukai used this information to start up his own company and create an identical trainman lantern product.

On July 3, 2007, Judge Burgess granted a preliminary injunction prohibiting Mukai from manufacturing,

marketing, and selling any of its M2K Trainman Lantern products to prevent patent infringement. [Dkt. #26]. In addition, Judge Burgess also ordered Mukai to return all confidential and trade secret materials obtained during his employment with A.G. Design. On Aug. 7, 2007, the Court entered an Order Granting Stay Pending Appeal. [Dkt. #54]. In response, Plaintiff moved the Court to reopen the case and enter an emergency order to prevent Marcus Mukai "from making blatant false representations to RailMarketplace." [Dkt. #58].

On Sept. 4, 2007, the Court entered an emergency order. [Dkt. #65]. The Defendant was ordered to "halt immediately any representations to individuals associated with Rail Marketplace falsely indicating that there are no further legal issues pending against him and his company by A.G. Design," and "immediately provide copies of the Order to recipients of Mr. Mukai's Aug. 8, 2007 email." Additionally, both parties were prohibited from "marketing the lanterns that are the subjects of this lawsuit until the infringement issue has been resolved and the injunction has been lifted." The Court reasoned that because its Order Granting Plaintiff's Motion for Preliminary Injunction was pending in the Federal Circuit, "neither party should have the advantage of marketing its product until further order of the Court." In its Order, the Court stated "neither Plaintiff nor Defendants may market their respective devices to anyone including RailMarketplace." [Dkt. #65].

On Sept. 6, the Court amended its Sept. 4, 2007 Order so that only Defendant was prohibited from marketing its lantern. The Court stated that because "the Court has concluded that A.G. Design demonstrated that it was entitled to injunctive relief and that it made a strong showing that the Accused Device likely infringes the patent in issue, there are no grounds to order plaintiff to cease marketing its lanterns, which is the subject of a valid patent." [Dkt. #68]. On March 24, 2008, the Federal Circuit vacated the preliminary injunction. On April 25, 2008, the Court ordered Mr. Mukai to "turn over all documents, information, electronic data, and other tangible things pertaining in any way to the manufacture, design, marketing, and sale of the trainman lantern (accused device)." [Dkt. #121].

On Sept. 9, 2008, Plaintiff filed its Motion for Order Holding Defendants in Contempt and Imposing Rule 37(b) Sanctions. [Dkt. #176]. Plaintiff contends that Defendants (1) willfully violated the Court's July 3, 2007 and September 6, 2007 Orders by marketing their lantern; and (2) violated the Court's April 25, 2008 Order by failing to produce marketing emails that Mukai sent in July 2007 and October 2007. Plaintiff requests that the Court hold the Defendant in contempt, dismiss Mukai's false marking claim, strike defendant's defense and counterclaims and enter judgment in favor of Plaintiff. Additionally, Plaintiff requests that the Court

sanction Defendant "in a monetary amount it deems fit."

## II. AUTHORITY

The Court has inherent power to enforce compliance with their lawful orders through civil contempt. *Shillitani v. United States*, 384 U.S. 364, 370 (1966). "The party alleging civil contempt must demonstrate that the alleged contemnor violated the court's order by 'clear and convincing evidence,' not merely a preponderance of the evidence." *United States v. Ayres*, 166 F.3d 991, 994 (9th Cir. 1999) (quoting *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993). Punishment for civil contempt is intended to be either coercive or compensatory. *United States v. Rylander*, 714 F.2d 996, 1001 (9th Cir. 1983). Additionally, a contempt fine is considered a civil sanction in the context of contempt proceedings if it compensates the complainant for losses sustained. *Lasar v. Ford Motor Co.*, 399 F.3d 1101, 1110 (9th Cir. 2005).

## III. DISCUSSION

### A. Marketing the Accused Devise

Plaintiff offers a number of e-mails contained in the Sealed Declaration of Robert Christie [Dkt. # 177] in order to establish that the Defendants violated three separate Court orders. These e-mails consist, in large part, of communications between Defendant Marucs Mukai and RailMarketplace (hereinafter RMP) concerning a Request for Proposal (RFP) process in which the Defendant sought to become the supplier of the Accused Devise. Plaintiff argues that the e-mails unequivocally demonstrate that the Defendant violated, on a number of occasions, the Court's July 3, 2007 and Sept. 6, 2007 Orders prohibiting the Defendant from marketing the Accused Device.

In response, Defendant does little to dispute the fact that TLC was in violation of the explicit Court orders prohibiting the Defendant from marketing the Accused the Device. Defendants ignore the terms of the orders and argues that because Plaintiff brought its motion for reconsideration of the Court's stay to prevent TLC from "making false representations regarding the status of the case" to RailMarketplace, the September 6, 2007 Order only prevents the Defendant from making false statements. The Defendant also argues that its communication with RailMarketplace was not a violation of the September 6, 2007 Order because Defendant

conducted no new marketing activities after the Order was issued and it merely "continued its relationship with RailMarketplace." [Dkt. #178]. Defendant reasons that if the Court were to prevent TLC from continuing its relationship with RailMarketplace, it would render the stay meaningless.

Defendant's arguments are unpersuasive and misguided. First, regardless of Plaintiff's particular motivation to seek reconsideration of the stay, the Defendant clearly violated the terms of the September 6, 2007 Order by continuing to market the Accused Device. In a September 18, 2007 e-mail, Marcus Mukai informed Sandy Edmundson of RailMarketplace and Jim Mathews of Norfolk Southern that he "look[ed] forward to participating in RailMarketplace's bid process." [Sealed Decl. of Robert Christie, Ex. C, RMP-SDT 00104]. Later, on October 10, 2007, Marcus Mukai thanked Sandy Edmundson for the RFP and informed her that TLC will prepare a response to send to RailMarketplace. [Sealed Decl. Of Robert Christie, Ex. C, RMP-SDT 00075-103]. On October 12, 14, 16, and 17 of 2007, Defendant Mukai made a number of inquiries about the bid process. [RMP-SDT 00059-70]. On October 29, 2007 he asked Sandy about the confidentiality of the bid process, and on October 31, 2007 submitted TLC's RFP response to RailMarketplace in an attempt to secure a contract to sell the lanterns. [RMP-SDT 00049-51, 00018-48].

The Sept. 4, 2007 Order specifically provided that "neither Plaintiff nor Defendants may market their respective devices to anyone including RailMarketplace [sic]." [Dkt. #65]. The September 6, 2007 Order modified Item # 3 on page 2 of the Court's September 4, 2007 so that it only prohibited the Defendant from marketing the lantern. [Dkt. #68]. It did not change any other terms of the September 4, 2007 Order. Therefore, it is clear that the Sept. 6, 2007 Order did not allow Defendant TLC to market the Accused Device to anyone, including RailMarketplace. The e-mails offered by Plaintiff establish that the Defendant actively marketed the device in violation of the Court's order.

The Court is unpersuaded by Defendants' argument that "TLC believed in good faith that it was free to continue its efforts in the RailMarketplace RFP process." The terms of the Court's Sept. 4 and Sept. 6 Orders were unambiguous. Moreover, the Defendant's claim is undercut by the fact that TLC violated the July 3, 2007 Order before the injunction was stayed, and the fact that Defendants withheld e-mails in violation of the April 25, 2008 Order.[1] TLC ignores the fact that on a number of occasions, Defendant violated the July 3, 2007 Order before the Aug. 7 stay was imposed. The Defendant violated the July 3, 2007 injunction, which

---

[1] *See infra* Part II.B

prohibited any marketing of the Accused Device, by providing Sandy Edmundson and Jim Mathews with specifications of the Accused Device. [*See* July 12, 2007 and July 17, 2007 e-mails, Sealed Decl. of Robert Christie**,** Ex. C, RMP-SDT 00145-52]**.** Then on July 24, 2007, Defendant Marcus Mukai e-mailed Mathews and Edmundson and assured them that TLC would be participating in the RailMarketplace RFP process. [*See* Sealed Decl. of Robert Christie, RMP-SDT 00141-44]. These communications, in which the Defendant is pursuing potential sales, constitute marketing of the Accused Device and violate the July 3, 2007 Order prohibiting the Defendants "from further manufacturing, marketing, or sale of the Accused Device or any similar product." [Dkt. #26].

### B. Production of Marketing E-mails

The Plaintiff also alleges that the Defendants violated the Court's April 25, 2008 Order by failing to produce materials pertaining in any way to the marketing of the Accused Device. [Dkt. # 176]. In particular, Plaintiff alleges that the Defendant withheld RMP-SDT 00015-18; 49-111; 115-55. In response, Defendants argue that RMP-SDT 00052-58; 77-97; 104-111; and 00141-142 were previously provided to Plaintiff and that TLC "is not a particpant" in other e-mails. However, Defendants do not deny that some documents were not provided to Plaintiff, stating that "once duplicate emails, emails that were previously produced to this court or plaintiff, and emails where TLC was not even a participant are removed, approximately 12 pages of new material are found." [Dkt. #178].

The Defendants argue that the unproduced e-mails "establish only that TLC may have missed two or three insignificant emails in the several hundred pages of documents produced to the Plaintiff. Defendants also respond to Plaintiff's assertion that Defendants violated the April 25, 2008 Order by characterizing the e-mails as irrelevant, unhelpful, and unprejudicial information. [Dkt. # 178]. Nevertheless, it is undisputed that the Defendants withheld the following documents: RMP-SDT 00015-18; 00049-50; 00059-60; 00062-65. It is unnecessary for the Court to discuss whether or not the other e-mails were, in fact, provided the Plaintiff. It is also unnecessary to determine whether or not every allegedly-withheld document is in violation of the April 25, 2008 Order. Rather, the Plaintiff's offer of documents pertaining to the marketing of the trainman lantern, the production of which the Plaintiff does not dispute, is sufficient to establish a violation of the Court's April 25, 2008 Order. It is troublesome to the Court that those e-mails are many of the same e-mails which establish that the Defendant violated the July 3, 2007 and September 6, 2007 Orders. Such e-mails clearly consisted of

material that pertain to marketing and sale of the trainman lantern, and thus, fall under the Court's April 25, 2008 Order. Because the Plaintiff has established by "clear and convincing evidence" that the Defendants violated the unambiguous orders of the Court, the Court holds Defendants in civil contempt. Defendants argue TLC's actions have not harmed or prejudiced Plaintiffs, and Plaintiffs do not place a specific dollar amount on their damages. Nonetheless, Defendants' failure to obey the Court's directives by withholding documents and marketing their lantern quite possibly harmed Plaintiff's business in the marketplace, created more discovery costs for Plaintiffs, and certainly added to the Court, the cost of responding and dealing with these issues. Therefore, the Court holds Defendants in civil contempt and imposes a compensatory sanction in the amount of $6,000.

## IV. CONCLUSION

The Defendants violated the July 3, 2007 and September 6, 2007 Court orders by marketing its trainman lanterns to RailMarketplace and Norfolk Southern. Moreover, by failing to produce documents, many of which implicated that the Defendants violated such Orders, the Defendants violated of the Court's April 25, 2008 Order compelling the production of any documents relating to the marketing of the trainman lantern. On multiple occasions, the Defendants acted in clear defiance of the orders of this Court. While the Defendants actions are egregious, the Court declines to impose sanctions of the severity requested by the Plaintiffs. Therefore, the Plaintiff's request that the Court strike Defendants' defenses and enter judgment in favor of Plaintiff on all claims in its Amended Complaint is DENIED. The Court holds the Defendants in civil contempt and sanctions the Defendants in the amount of six-thousand dollars for its multiple violations of the Court's Orders. This sanction is compensatory in nature, and must be paid to the Plaintiff. The sanction is intended to allow Plaintiff to recover from losses created by the Defendants marketing its trainman lantern, and at least a portion of the costs of Plaintiff's motion for sanctions. The Plaintiff's request that the Court impose sanctions is therefore GRANTED IN PART. Because the Court holds the Defendants in civil contempt and imposes sanctions for its violations of the July 3, 2007, Sept. 6, 2007, and April 25, 2008 Orders, is unnecessary for the Court to decide whether it may sanction the Defendants under Fed. R. Civ. P. 37(b) for violating the April 25, 2008 Order. If Defendants fail to comply with future orders of the Court, the Court will be inclined to impose sanctions of a greater severity.

1 | IT IS SO ORDERED.

Dated this 22nd day of October, 2008.

_Ronald B. Leighton_
RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE