HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| A.G. DESIGN & ASSOCIATES, LLC, a Washington Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>TRAINMAN LANTERN COMPANY, INC., a Washington Corporation d/b/a AMERICAN LANTERN COMPANY, INC.; AMERICAN LANTERN, INC. , a Foreign Corporation; MARCUS MUKAI, individually and as a marital community with JANE DOE MUKAI; G. SCOTT MUKAI; AND JOHN DOE DEFENDANTS 1 THROUGH 10,<br><br>Defendant. | Case No. C07-5158RBL<br><br>ORDER DENYING SUMMARY JUDGMENT IN PART AND GRANTING SUMMARY JUDGMENT IN PART |

This matter is before the Court on a motion by Plaintiff A.G. Design & Associates, LLC, for partial summary judgment [Dkt. #196]. Plaintiff seeks dismissal of Defendants Trainman Lantern Company, Marcus Mukai, and G. Scott Mukai's counterclaims for false marking, breach of contract, violation of the Consumer Protection Act, and tortious interference. For the reasons set forth below, motion is DENIED in part and GRANTED in part.

**I.   Introduction**

Plaintiff A.G. Design & Associates, LLC (A.G. Design) is a Washington limited liability corporation that sells railroad lanterns for use by trainmen and engineers [Dkt. #1]. One of A.G. Design's products is the Official Trainman Lantern which is manufactured and marketed under U.S. Patent

ORDER
Page - 1

No. US 7,118,245 ('245 patent) [Dkt. #1, Ex. A]. Defendant Trainman Lantern Company, Inc. is a Washington corporation; brothers Marcus Mukai and G. Scott Mukai are individuals and residents of Washington and Hawaii respectively (collectively T.L.C., Defendants, or Mukai brothers) [Dkt. #1, 28]. T.L.C. similarly markets its own trainman lantern known as the M2K. [Dkt. #14] The history leading up to this suit is well chronicled in other documents filed with the Court, however a brief synopsis of the facts will bring into context the claims raised by this motion. A.G. Design's president and C.E.O., Allen Herrington began developing the Official Trainman Lantern in 1999 at which point he began meeting with a patent attorney, Thomas W. Seacrest [Dkt. #196] After several meetings discussing Mr. Herrington's intention to eventually patent A.G. Design's final lantern design, Mr. Herrington began applying labels marked "patent pending" to Official Trainman Lanterns. [Declaration of Herrington, at ¶ 4.] This Court previously determined that only false marking claims between the dates of October 11, 2002 and May 11, 2004 would proceed to trial [Dkt. #173].

On August 12, 2003, the Mukai brothers expressed an interest in purchasing A.G. Design. The Mukai brothers incorporated Defendant Trainman Lantern Co. (T.L.C.) to facilitate the purchase. [Dkt #6, 13]. A.G. Design and T.L.C. executed a Letter of Intent (L.O.I.) on August 12, 2003, for the sale of A.G. Design to T.L.C. [Dkt. #197, Ex. B.]. Pursuant to the terms of the L.O.I. the Mukai brothers transferred $7,500.00 in earnest money to A.G. Term number three of the L.O.I. allowed A.G. Design to use the earnest money to cover attorneys' fees in the event that T.L.C. cancelled discussions regarding the purchase of A.G. Design. After an agreed upon extension, the L.O.I. was to expire on February 27, 2004 [Id., Ex. D.]. At some point, A.G. Design's attorney (Lawrence Pirkle) began drafting the purchase and sale agreement to be used for the proposed asset purchase, accumulating $7,770.00 in legal fees. [Dkt. #197, Ex. G.].

However, on February 25, 2004, the Mukai brothers delivered a letter to A.G. changing, among other terms, the purchase price for the proposed asset purchase [Id., Ex. E.]. A.G. Design rejected the new terms of the February 25th letter and informed T.L.C. that it would not reimburse the $7,500.00 earnest money pursuant to the attorneys' fees reimbursement clause contained in the L.O.I. [Id., Ex. F.; Ex.B.]. Plaintiff requests that the Court dismiss Defendant's counterclaim for breach of contract regarding the L.O.I. Plaintiff argues that the February 25th letter was an express breach of contract by the Defendants

1 and as such A.G. Design is entitled to retain the earnest money to cover its attorney's fees pursuant to the
2 L.O.I.

3 Both A.G. and T.L.C. continued doing business after the proposed asset purchase fell through. T.L.C. continued to exist and later that year began researching the possibility of manufacturing its own lantern, the M2K [Dkt. #145]. T.L.C. actively entered the railroad lantern business in October 2006 [Dkt. #138]. Likewise, A.G. Design continued selling its lantern, as it had prior to the L.O.I. A.G. Design received a patent for its lantern on August 7, 2006 [Dkt. #15-4], and subsequently brought suit against the Defendants on March 30, 2007 [Dkt. #1]. This Court eventually dismissed the patent infringement claim, ruling that A.G. Design was estopped from asserting that claim. [Dkt. #143].

## II. Discussion.

Summary judgment is only appropriate if there is no genuine issue of material fact, and when the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 744 U.S. 242, 247-48 (1986); Fed. R. Civ. P. 56. When viewing the facts, all reasonable inferences must be drawn in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The non-moving party's bare assertion of a dispute is insufficient to create a material issue of fact and defeat summary judgment. *Anderson*, 477 U.S. at 247-48; *Dubois v. Ass'n of Apt. Owners*, 453 F.3d 1175, 1180 (9th Cir. 2005). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).

### A. False Marking Claim

Plaintiff A.G. Design seeks dismissal of the Defendants' false marking claim brought under 35 U.S.C. § 292 (2000). Plaintiff argues that the Defendants offer no evidence establishing the deceitful intent required by the statute, and that any evidence supporting deceitful intent is successfully rebutted. Because material issues of fact remain, Plaintiff's motion on this issue is DENIED.

To establish false marking, a plaintiff must show (1) a marking importing that an object is patented; (2) falsely affixed; to (3) an unpatented article; with (4) intent to deceive the public. *Mayview Corp. v. Rodstein*, 620 F.2d 1347, 1359 (9th Cir. 1980). Only the fourth element, deceitful intent,

ORDER
Page - 3

is disputed by the parties. Intent to deceive is established by factual support showing sufficient knowledge by the claimed patentee that said patent does not in fact exist. *Seven Cases of Eckman's Alternative v. United States*, 239 U.S. 510, 517-18 (1916) While intent to deceive is subjective in nature, objective standards control. *Clontech Labs, Inc. v. Invitrogen Corp.*, 406 F.3d 1347, 1352 (Fed. Cir. 2005). Therefore, in order to survive Plaintiff's summary judgment motion, the Defendants must produce evidence which, viewed in the light most favorable to them, shows a deceitful intent; namely, that the Plaintiff did not have a reasonable belief that the lanterns were properly marked.

The Defendants cite sufficient facts to show that A.G. Design began marking their lanterns as "patent pending" as early as 1999, prior to actually applying for a patent in 2004. [Dkt. #205]. This fact is sufficient to support the inference that the A.G. Design had knowledge of the mislabeling as early as 1999[1].

Plaintiff cites to several conversations with its lawyer, Mr. Seacrest, in support of its subjective belief that the Official Trainman Lantern was properly marked as patent protected. However, Plaintiff fails to produce evidence demonstrating that Mr. Seacrest ever conveyed that the lantern was in fact patent protected or that it would ever be patent protected during the October 11, 2002 to May 11, 2004 period. During the period in question there was never a design submitted to the patent office nor an agreement between Mr. Seacrest and Mr. Herrington showing their efforts to actually patent the lantern[2]. Not until May 11, 2004 was a patent application even submitted by the Plaintiff [Dkt. #196]. Plaintiff offers insufficient factual support for the court to determine as a matter of law that a reasonable fact finder could not find deceitful intent. Accordingly, Plaintiff's motion for summary judgment on this issue is DENIED.

**B.     Number of False Marking Violations.**

Plaintiff's motion also requests that the Court determine the number of false marking violations occurring under 35 U.S.C. § 292, if any, between October 10, 2002 and May 11, 2004. Because there is

---

[1] This Court limited the range of dates for false marking claims in this dispute to October 11, 2002 and May 11, 2004 because the statute of limitations on claims prior to October 11, 2002 had run [Dkt. #173].

[2] Plaintiff's good faith argument, based on *Victoria-Vogue, Inc. v. Valcourt, Inc.*, 148 F. Supp. 160, 171 (S.D.N.Y. 1956) is unpersuasive. *Victoria-Vogue* would only apply if A.G. Design had actually received a patent, only to have the patent later invalidated–which it did not. Similarly, Plaintiff's good faith argument based on *High Frequency Products, Inc. v. Wynne's Climate Systems, Inc.*, 892 F. Supp. 1515 (Fla. Dist. Ct. 1995), aff'd, 91 F.3d 167 (Fed. Cir. 1996) is incorrect, as A.G. has not established as a matter of law that it received advice from its attorney upon which it relied on in marking the lanterns as "patent pending."

ORDER
Page - 4

no issue of material fact on this issue, the Plaintiff's motion for summary judgment on this issue is GRANTED.

The parties disagree as to what constitutes an "offense" under 35 U.S.C. § 292; however this is an issue of law, not fact. 35. U.S.C. § 292 requires a that a violator "shall be fined not more than $500 for every such offense." While there is no binding precedent on this Court, the Plaintiff argues persuasively that only one continuous offense, if any, occurred. Plaintiff contends that while the "patent pending" label was affixed to at most 15,000 lanterns between the dates in question, the "offense" occurred only one time as a single continuous offense. As the Plaintiff notes, other courts have found the continuous offense interpretation proper under similar facts when applying 35. U.S.C. § 292 (*See Sadler-Cisar, Inc.*, 786 F. Supp. at 1296 (*citing Hoyt v.Computing Scale Co.*, 96 F. 250 (S.D. Ohio 1899) (emphasis added); *London v. Everett H. Dunbar Corp.*, 179 F. 506 (1st Cir. 1910)). Defendant's argument in response is not persuasive.

Plaintiff's interpretation logically makes sense when considering other violations in our legal system. For example, counterfeiting laws do not apply to every bill counterfeited; rather only to the act of illegally producing or tendering the counterfeit bills. Moreover, theft of one thousand dollar bills from a man's wallet would only constitute a single offense of theft. Because the affixing of the "patent pending" label occurred as a continuous offense, the Plaintiff can only be found to have violated 35. U.S.C. § 292 once. The Plaintiff's motion for summary judgment on this issue is therefore GRANTED.

**C. Breach of Contract Claim**

Plaintiff seeks dismissal of the Defendants' counterclaim for breach of the L.O.I. contract. Plaintiff argues that Defendants effectively repudiated the contract with their February 25th letter, calling the letter a "counter proposal," which was rejected by the Plaintiff. [Dkt. #196]. Because the Defendants repudiated a valid contract between the parties, the Plaintiff's motion for summary judgment dismissing the Defendants' counterclaim for breach of contract is GRANTED.

The L.O.I. was a valid bilateral contract. It set forth the subject matter, parties, mutual assent, the terms and conditions and the consideration paid. *See*, *Kloss v. Honeywell, Inc.*, 77 Wn. App. 294, 890 P.2d 480 (1995). Upon breach, an injured party is entitled to recover damages which fairly and reasonably arise from the breach, or which were reasonably agreed to by the parties at the time the contract

was made. *Gaglidari v. Denny's Rest.*, 117 Wn.2d 426, 445-46, 815 P.2d 1362 (1991). Damages which fairly and reasonably arise from the breach are those necessary to put the injured party in the same economic position it would have occupied had the breach not occurred. *TMT Bear Creek Shopping Ctr. Inc. v. Petco Animal Supplies, Inc.,* 140 Wn. App. 191, 210, 165 P.3d 1271 (2007).

Pursuant to the L.O.I., A.G. Design agreed to take the company off the market to allow Defendants to procure financing to purchase it. A.G. Design also provided the Defendants full access to its financial information. In exchange for this consideration, the Defendants paid A.G. Design $7,500.00 earnest money. Under the terms of the L.O.I., the purchase price was $5.5 million, with a $1.5 million cash payment upon closing [Dkt. #197, Ex. B.]. According to the L.O.I., "all other essential terms and conditions of the asset purchase agreement [would] be mutually acceptable to all parties." The L.O.I. clearly and unambiguously established that terms numbered 1, 3 and 4 were non-negotiable. Therefore, when the Defendants delivered their February 25th letter altering the purchase price[3], the L.O.I. was expressly repudiated by the Defendants.

Anticipatory repudiation of a contract occurs when one of the parties to a bilateral contract either expressly or impliedly repudiates the contract prior to the time of performance. *Wallace Real Estate Inv., Inc. v. Groves*, 124 Wn.2d 881, 898, 881 P.2d 1010 (1994). "An anticipatory breach is a 'positive statement or action by the promisor indicating distinctly and unequivocally that he either will not or cannot substantially perform any of his contractual obligations.'" *Id*. A party's intent to repudiate may be expressly asserted or circumstantially manifested by conduct. *CKP, Inc. v. GRS Const. Co.*, 63 Wn. App. 601, 620, 821 P.2d 63 (1991).

The February 25th letter operated to repudiate the L.O.I. The Defendants had continued trouble ascertaining the requisite financing to purchase A.G. Design. See, Dec. of Herrington, Ex. E & F. By proposing the lowered purchase price, the Defendants conveyed that they were either unwilling or unable to pay the purchase price agreed to in the L.O.I., thereby terminating purchase discussions. As such, the Plaintiff was correct in treating the letter as a counter proposal, which it properly rejected in Mr. Herrington's March 1, 2004 letter to the Defendants. *Id*. Because term number three of the L.O.I. allows

---

[3] The Defendants attempted to change the mutually assented to purchase price by both parties in the L.O.I. to $850,000.00 cash payment plus $500,000.00 at close along with other conditional payments.

for forfeiture of the earnest money to cover attorney's fees in the event that the Defendants terminate discussions, Plaintiff's refusal to return the $7,500.00 to Defendants was valid and did not itself constitute a breach of contract. Because the Defendants' counterclaim for breach of contract is without factual support or merit, Plaintiff's motion for summary judgment dismissing the claim is GRANTED.

### D. Consumer Protection Act Claim.

Plaintiff seeks dismissal of Defendants' claim for Consumer Protection Act violation due to a lack of factual support. The Defendants have completely changed the basis for their argument, and now rely on the false marking as factual support for their claim[4]. Even the Defendants' new and untimely argument does not establish a prima facie case for a violation of the Consumer Protection Act and as such Plaintiff's motion for summary judgment on this claim is GRANTED.

In order to survive a summary judgment challenge, Consumer Protection Act claims must establish at least a disputed issue of material fact for all five of the following elements: (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; and (5) causation. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986).

Defendants originally claimed that the requisite unfair or deceptive act required by element one occurred when A.G. Design asserted ownership over *all* trainman lanterns. After failing to produce any factual support for that argument, the Defendants eventually changed their claim, asserting that the deception perpetrated by A.G. Design is established by the evidence supporting Defendant's claim that Plaintiffs falsely marked their lanterns as "patent pending" in the past. [Dkt. #205].

The Court has already addressed the possibility of deceit by A.G. Design's falsely marking the lanterns; therefore, the Defendants' claim does not fail on this element. There is also evidence supporting the allegation that the lanterns were in fact sold in interstate commerce, satisfying element two. The Defendants make a tenuous argument for element three, claiming that public interest was affected by the deceptive "patent pending" label, which last occurred in May 2004. However, the Court need not determine the validity of this reasoning, as elements four and five of the Consumer Protection Act Claim

---

[4] Defendants originally based their Consumer Protection Act counter claim on the assertion that A.G. Design was claiming ownership over all trainman lanterns, not just the '245 lanterns [Dkt. #157].

are not satisfied as a matter of law.

The Defendants have not established factual support for elements four and five of their CPA claim. While the Defendants reference "victims" who were "affected by [A.G. Designs'] deceptive conduct," at no point do they even claim that they, or their business, were injured by the false labeling. [Dkt. #205]. Moreover, because the Defendants do not claim any injury they cannot logically satisfy the causation requirement and do not offer evidence tending to support that element. The Plaintiff's Motion for Summary Judgment on the Defendants' CPA claim is therefore GRANTED.

### E. Tortious Interference Claim.

Finally, Plaintiff seeks dismissal of Defendants' claim for tortious interference, citing its inability to provide factual support to establish its prima facie case. Because the Defendants fail to offer any material issues of fact to support its claim, Plaintiff's motion for summary judgment on this issue is GRANTED.

In order to survive summary judgment, a claim of tortious interference must provide evidence tending to establish all five of the following elements: (1) the existence of a valid contractual relationship or business expectancy; (2) that defendants had knowledge of that relationship; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) that defendants interfered for an improper purpose or used improper means; and (5) resultant damage. *Leingang v. Pierce County Med. Bureau, Inc.*, 131 Wn.2d 133, 157, 930 P.2d 288 (1997).

The Defendants fail to provide evidence establishing a material issue of fact on any of these five elements. The only detail offered by the Defendants to support their claim is the assertion that Plaintiff communicated to one of its potential customers that T.L.C.'s business had been "shut down" [Dkt. #205]. This assertion is completely unsubstantiated by the record. Element one is not satisfied as the Defendants never claim a contractual relationship at the time of the alleged "shut down" comment[5]. Element two is not satisfied as it is wholly unsupported by any evidence. There is no evidence that a contractual relationship existed at the time; therefore, there is also no evidence that A.G. Design had knowledge of such a relationship.

Defendants fail to establish element three because they offer no factual support for a valid business

---

[5] As the Plaintiff correctly points out, the Defendants' claim that A.G. Design or its agents at some point conveyed to a potential customer of T.L.C.'s that their business had been "shut down" is wholly unsupported.

expectancy or valid contractual relationship whatsoever. Defendants claim that Plaintiff interfered with the business dealings between T.L.C. and Norfolk Southern Railroad [Dkt. #205]. However, Defendants fail to establish that any contractual relationship between Norfolk Southern and T.L.C. ever existed. Similarly, Defendants produce no facts showing a valid business expectancy between T.L.C. and Norfolk Southern.

Because the Defendants failed to show that any interference occurred, they cannot establish that the purpose or means of the claimed interference was improper; therefore, element four is also unsatisfied. Finally, Defendants have not even claimed, much less established, that they were damaged by the Plaintiff's conduct. Because the Defendants have failed to establish factual support for any element of a valid tortious interference claim, the Plaintiff's motion for summary judgment on this issue is GRANTED.

### III. Conclusion

T.L.C. has established an issue of material fact on the false marking claim. Therefore, A.G. Design's motion for summary judgment on this issue is DENIED. T.L.C. has failed to establish an issue of material fact on the remaining issues including the number of violations for false marking, breach of contract, Consumer Protection Act violation, and tortious interference. Therefore, the A.G. Design's Motion for Summary Judgment [Dkt. #196] on these issues is GRANTED.

IT IS SO ORDERED.

Dated this 23rd day of January, 2009.

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE