UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| A.G. DESIGN & ASSOCIATES, LLC, a Washington Limited Liability Company, Plaintiff, | Case No. C07-5158RBL |
| v. | ORDER GRANTING SUMMARY JUDGMENT IN PART AND DENYING SUMMARY JUDGMENT IN PART |
| TRAINMAN LANTERN COMPANY, INC., a Washington Corporation, d/b/a AMERICAN LANTERN COMPANY, INC.; AMERICAN LANTERN, INC., a Foreign Corporation; MARCUS MUKAI, individually and as a marital community with JANE DOE MUKAI; . SCOTT MUKAI; and JOHN DOE DEFENDANTS 1 THROUGH 10 , Defendant. | |

This matter is before the Court on a motion by Defendants', Trainman Lantern Company (T.L.C.), Marcus Mukai, and G. Scott Mukai (Mukai brothers) for summary judgment on all of Plaintiff's claims. For the reasons set forth below, motion is GRANTED in part and DENIED in part.

## I. Introduction

Plaintiff A.G. Design & Associates (A.G.), LLC, brought this suit against Defendants on March 30, 2007. The only remaining causes of action are: trade dress infringement, breach of contract, misappropriation, conversion, unfair competition, tortious interference and violation of the Consumer Protection Act[1].

---

[1]Plaintiff's patent infringement claim has already been dismissed via summary judgment by the Court [Dkt #143].

In 2000, A.G. hired Pulse Power to develop rechargeable batteries for the Trainman Lantern [Dkt. #6; 13; 14]. Defendant Marcus Mukai was then an employee of Pulse Power and became acquainted with Plaintiff in that manner. Mr. Mukai was interested in A.G. and became a sales representative on April 1, 2003, by entering into a non-exclusive sales representative agreement with A.G. (the April 1 Agreement) [Dkt # 6, 13] The April 1 Agreement contained both a non-disclosure covenant and a three-year covenant not to compete. [Dkt. #6, Ex., B]. The Court has already determined that the April 1 Agreement is a valid and enforceable contract [Order, Dkt. #148].

On August 12, 2003, the Mukai brothers expressed an interest in purchasing A.G. The Mukai brothers incorporated Defendant Trainman Lantern Co. (T.L.C.) to facilitate the purchase. *Id.* A.G. and T.L.C. executed a Letter of Intent (L.O.I.) on August 12, 2003, for the sale of A.G. to T.L.C. [Dkt. #197, Ex. B.]. Similar to the April 1 Agreement, the L.O.I. contained confidentiality provisions which the Defendants agreed to. *Id.* On February 25, 2004, the Mukai brothers delivered a letter to A.G. changing, among other terms, the purchase price for the proposed asset purchase [*Id.*, Ex. E.]. A.G. Design rejected the new terms of the February 25th letter and informed T.L.C. that it was no longer pursuing the asset purchase deal.

Both A.G. and T.L.C. continued doing business after the proposed asset purchase fell through. T.L.C. continued to exist and later that year began researching the possibility of manufacturing its own lantern known as the M2K [Dkt. #145]. T.L.C. actively entered the railroad lantern business in October 2006 [Dkt. #138]. Likewise, A.G. Design continued selling its lantern, as it had prior to the L.O.I. A.G. Design received a patent for its lantern on August 7, 2006 [Dkt. #15-4], and subsequently brought suit against the Defendants on March 30, 2007 [Dkt. #1].

## II. Discussion

Summary judgment is only appropriate when no genuine issue of material fact exists, and when the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 744 U.S. 242, 247-48 (1986); Fed. R. Civ. P. 56. When viewing the facts, all reasonable inferences must be drawn in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The non-moving party's bare assertion of a dispute is insufficient to create a material issue of fact and defeat summary judgment. *Anderson*, 477 U.S. at 247-48; *Dubois v. Ass'n of Apt. Owners*, 453 F.3d 1175, 1180 (9th Cir. 2005). In other words,

"summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).

### A. Trade Dress Claim

In its response to Defendants' motion to dismiss Plaintiff's trade dress claim, Plaintiff did not oppose dismissal. Therefore, pursuant to FRCP Rule 15(a), the claim is dismissed and summary judgment on this claim is hereby GRANTED.

### B. Breach of Contract

Plaintiff complains of two distinct breaches of contract. First, Plaintiff claims that Defendants breached the April 1, 2003 Agreement [Dkt. #133]. Second, Plaintiff claims that Defendants breached the L.O.I. when they failed to comply with the confidentiality provisions set forth therein. *Id.*

Defendants seek dismissal of Plaintiff's breach of contract claim and argue that they did not breach the April, 1, 2003 Agreement. Defendants contend that Mr. Mukai reasonably relied on an email from A.G. dated September 16, 2004, in understanding that there was no such valid agreement between the parties [Dkt. #207]. The email states that the April 1, 2003 Agreement was "never signed or put into affect" *Id.* However, the Court has already held that the April 1, 2003 Agreement is a valid contract [Order, Dkt. #148]. Because the Court has ruled that the April 1, 2003 Agreement was indeed valid, Defendants' arguments for dismissal on this issue are rejected.

Defendants fail to address Plaintiff's claim of breach of contract as it pertains to the L.O.I.'s confidentiality provision. Defendants offer no evidence supporting a dismissal of Plaintiff's claim for breach of the confidentiality provision in the L.O.I. Because Defendants failed to establish an absence of an issue of material fact, summary judgment on this issue is DENIED.

### C. Misappropriation

Defendants seek dismissal of Plaintiff's misappropriation claim. Plaintiff claims that Defendants misappropriated trade secrets by misusing two distinct sets of information which it acquired through its contractual relationship with A.G. First, Plaintiff claims that Defendants acquired A.G.'s confidential customer lists to compete directly against A.G. [Dkt. #212]. Second, Plaintiff claims that Defendants copied A.G.'s lantern design in developing their own lantern to compete with A.G.'s.

The Uniform Trade Secrets Act provides a statutory cause of action for misappropriation of a trade

secret. RCW 19.108.010 *et seq.* The act's purpose is to "maintain and promote standards of commercial ethics and fair dealing in protecting [trade] secrets." *Nowogroski Insurance, Inc. v. Rucker*, 137 Wn.2d 427, 438, 971 P.2d 936 (1999). Misappropriation is "disclosure or use of a trade secret of another without express or implied consent by a person who...acquired [information] under circumstances giving rise to a duty to maintain its secrecy or limit its use." *Id.* The definition of "trade secret" is a matter of law, but whether specific information in a given case is a trade secret is an issue of fact. *Nowogroski Insurance, Inc.*, 137 Wn.2d at 436. A trade secret is reasonably protected information, including a pattern or design, that derives independent economic value from not being generally known to another who could use it for his own economic value. "[W]hether a customer list is a protected trade secret depends on three factors: (1) whether the list is a compilation of information; (2) whether it is valuable because it is unknown to others; and (3) whether the owner has made reasonable attempts to keep the information secret." *Id.* at 442.

A.G.'s customer lists qualify as a trade secret. Element one is met because the customer list is a compilation of information about A.G.'s customers. Element two is met because the information's value is at least slightly derived from its unavailability to others. While there are only a finite number of railroad customers discoverable by T.L.C., there are many other customers on the list which would not be easily ascertainable by other means. Knowing of A.G.'s other potential customers that may be in the market for a trainman lantern may likely increase sales of T.L.C.'s lanterns. Finally, element three is met by A.G.'s continued inclusion of confidentiality provisions in both the April 1, 2003 Agreement and the L.O.I., both of which may have exposed Mr. Mukai to the customer lists.

There is sufficient evidence supporting a material issue of fact over whether the customer lists were misappropriated. Plaintiffs claim that Defendants had access to the customer lists under both the April 1, 2003 agreement and the L.O.I., and that they may have misused the confidential information in marketing their product [Dkt. #212]. Defendants fail to dispute this allegation and as such their motion for summary judgment dismissing the Plaintiff's misappropriation claim is DENIED.

A.G.'s lantern design qualifies as a trade secret. The design has provided substantial profits for A.G. over the years including $846,838.00 in 2003 [Dkt. #212]. The value of the unique lantern design itself is supported by the fact that it was eventually patented in 2007. There is a material issue of fact as to whether A.G.'s lantern design was misappropriated by T.L.C. Defendants claim that they independently

developed their lantern without using any of A.G.'s confidential information [Dkt. #207]. Plaintiff claims, and offers expert opinion to support, that Defendants used A.G.'s design in developing their own lantern to compete with A.G.'s Official Trainman Lantern [Dkt.#212]. Specifically, Plaintiff claims that Defendants copied the "primary light source, secondary light source, outer reflective surface, body and transparent housing...[from]...the Official Trainman Lantern." *Id*. Because evidence establishes a material issue of fact over whether A.G.'s lantern design was misappropriated, Defendants' motion for summary judgment on this issue is DENIED.

### D. Conversion

Defendants seek dismissal of all of Plaintiff's claims but do not specifically address Plaintiff's conversion claim. Plaintiff argues that evidence supports maintaining its conversion claim at trial. Because there is a material issue of fact, Defendants' motion for summary judgment on this issue is DENIED.

"Conversion is the unjustified, willful interference with a chattel which deprives a person entitled to the property of possession." *In re Marriage of Langham*, 153 Wn.2d 553, 564, 106 P.3d 212 (2005), *citing Meyer Way Dev. Ltd. P'ship v. Unitv. Sav. Bank*, 80 Wn. App. 655, 674-75, 910 P.2d 1308 (1996), *review denied*, 130 Wn.2d 1015, 928 P.2d 416 91996). A chattel is an article of personal property; it includes tangible goods or intangible rights. *In re Marriage of Langham*, 153 Wn.2d at 564. Good faith is irrelevant in a conversion action. *Id*. at 566.

Plaintiff contends, and Defendants fail to offer evidence to the contrary, that Defendants converted A.G.'s customer lists and lantern design [Dkt. #212]. The April 1, 2003 Agreement required Marcus Mukai to return all materials in his possession related to A.G.'s business. [Amended Complaint, Dkt. #133, Ex. B]. However, Mr. Mukai retained copies of hundreds of pages of documents pertaining to A.G.'s marketing, advertising and business operations which he kept for over one year [Dkt. #121]. This evidence supports A.G.'s claim for conversion and creates a genuine issue of material fact that precludes dismissal.

### E. Unfair Competition

Defendants seek dismissal of all of Plaintiff's claims but do not specifically address Plaintiff's unfair competition claim. Unfair competition suits between private parties are supported by the common law of Washington state. *Seabord Sur. Co. v. Ralph Williams' Northwest Chrysler Plymouth,* 81 Wn.2d 740, 745, 504 P.2d 1139 (1973). No bright line test has been established to identify what constitutes unfair competition. Instead, the facts of each case are determinative of whether a claim of unfair competition is

available to the plaintiff. *Olympia Brewing Co. v. Northwest Brewing Co.*, 178 Wash. 533, 35 P.2d 104 (1934). Ultimately, the main inquiry centers on whether the public is likely to be deceived by the conduct. *Id.*

Plaintiff argues that the unfair conduct perpetrated by the Defendants ultimately led to deception of A.G.'s customers [Dkt. #212]. Plaintiff claims that Defendants gained access to its proprietary and confidential information by signing the L.O.I. and April 1, 2003 Agreement, only to later use that information to develop their own similar lantern. *Id.* Plaintiff further claims that by using its customer lists, the Defendants sought to deceptively market their lantern to A.G.'s customers. *Id.* Defendants offer no evidentiary support for dismissal of this claim. Because a genuine issue of material fact exists precluding dismissal, Defendants' motion for summary judgment on this issue is DENIED.

**F. Tortious Interference**

Defendants seek dismissal of Plaintiff's claim for tortious interference with its business expectancy. Plaintiff argues that there is evidentiary support for the claim. A party claiming tortious interference with a business expectancy must produce evidence satisfying five elements in order to survive summary judgment: (1) the existence of a valid business expectancy; (2) that defendants had knowledge of that expectancy; (3) an intentional interference inducing termination of the expectancy; (4) that defendants interfered for an improper purpose or used improper means; and (5) resultant damage. *Leingang v. Pierce County Med. Bureau, Inc.*, 131 Wn.2d 133, 157, 930 P.2d 288 (1997).

Plaintiff satisfies element one by producing evidence showing that in 2003 it had four Class I railroads as customers [Dkt. #212]. During the time period in which Plaintiff claims tortious interference, all but one of those customers have been lost. Plaintiff's valid business expectancy was to retain most if not all of its Class I customers; however, it now sells to only one Class I railroad.

Plaintiff satisfies element two by producing evidence that Marcus Mukai, while a sales representative for A.G., knew of A.G.'s Class I customers and that he knew that A.G. was soliciting Canadian National.

Plaintiff satisfies element three by producing circumstantial evidence that Mr. Mukai may have knowingly and intentionally interfered with A.G.'s business expectancy when he met with CN's purchasing agent (Nick Lesey).

Plaintiff satisfies element four by producing circumstantial evidence that Mr. Mukai used his

position as an A.G. representative to deter potential A.G. customers, namely Mr. Lesey. Plaintiff alleges that Mr. Mukai besmirched A.G. when he was trusted with acting as the representative of A.G. to CN. If proven to be true, the improper means element may be satisfied based on the implied duty owed by Mr. Mukai to A.G. while acting in a representative capacity.

Finally, Plaintiff produces evidence that as a result of the alleged interference, A.G. suffered more than $1,000,000.00 in damages [Dkt. #212].

Again, Defendants offer no evidentiary support for dismissal of this claim. Because a genuine issue of material fact exists precluding dismissal, Defendants' motion for summary judgment on this issue is DENIED.

### G. Consumer Protection Act Claim

Defendant seeks dismissal of Plaintiff's claim for Consumer Protection Act violation. Because Plaintiff fails to produce evidence supporting a prima facie case for its claim, Defendants' motion for summary judgment is GRANTED.

In order for Plaintiff's Consumer Protection Act claim to survive a summary judgment challenge, there establish at least a disputed issue of material fact for all five of the following elements: (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; and (5) causation. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986).

Element one dealing with deception is satisfied based on the fact that Marcus Mukai was employed by A.G. at the same time he was developing his own competing lantern. Drawing inferences most favorably to A.G., the Court may infer that Mr. Mukai used A.G.'s confidential and proprietary information in actually developing its own lantern.

Element two is easily satisfied as Plaintiff produces abundant evidence showing both a decrease in A.G.'s sales [Dkt. #212] and efforts by T.L.C. to market their lanterns in interstate commerce [Dkt. #177, Ex. C.].

Element four is satisfied as Plaintiff produces evidence showing financial losses of $490,047.00 since 2003 [Dkt. #212]. Element five dealing with causation is also satisfied. There is circumstantial evidence supporting the inference that Mr. Mukai may have tampered with the relationship between CN and A.G., causing at least some of the claimed financial injuries experienced by A.G. since 2003.

Plaintiff's Consumer Protection Act claim fails on element three as a matter of law. Consumer Protection Act claims between private parties have no public interest impact unless the plaintiff can produce evidence showing a likelihood that additional persons have been or will be injured in the same fashion. *Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc.*, 86 Wn. App. 732, 744-45, 935 P.2d 628, 635 (1997). While the Plaintiff produced evidence that the lantern was marketed to the general public on the T.L.C. website, it failed to produce any evidence of an injury to the public. There is no evidentiary support that any additional persons, outside of A.G. Design, were ever injured. In fact, Plaintiff correctly points out that "[D]efendants conceded that they have not sold *any* lanterns" [Dkt. # 210]. If no lanterns were actually sold to the public, then it is difficult to understand how public interest was affected by this otherwise private dispute between parties. There is also no evidence supporting Plaintiff's contention that additional persons will be affected by T.L.C.'s actions in the future. Because there is no issue of material fact regarding the public interest element, Defendants' motion for summary judgment on this claim is GRANTED.

### III. Conclusion

Neither party opposes dismissal of the trade dress claim. Therefore, Defendants' motion for summary judgment on this issue is GRANTED. Plaintiff failed to establish a prima facie case for its Consumer Protection Act claim; therefore, summary judgment on this issue is also GRANTED. Because Defendants fail to establish an absence of a material issue of fact for any other claims, summary judgment is DENIED on all remaining claims.

Dated this 30th day of January, 2009.

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE